UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED,<br><br>Defendant. | Adv. Pro. No. 12-01512 (CGM) |

**MEMORANDUM DECISION**
**DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
By:    Amy E Vanderwal
       David J. Sheehan
       Chardie C. Charlemagne

*Special Counsel to Irving H. Picard, Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street New York, New York 10019
By:    Howard L. Simon
       John J. Tepedino

*Attorneys for Defendant ZCM Asset Holding Company (Bermuda) Limited*
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York 10001
By:    Steven I. Froot
       Alan B. Vickery
       Andrew Villacastin

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Pending before the Court is the motion of the Defendant, ZCM Asset Holding Company

(Bermuda) Limited ("ZCM"), to dismiss the complaint of Irving Picard, the trustee ("Trustee")

for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to

recover subsequent transfers allegedly consisting of BLMIS customer property. Defendant seeks

dismissal for failure to allege that it received BLMIS customer property and for improper

adoption by reference of certain allegations. Defendant asserts that it is entitled to the "safe

harbor" defense under 11 U.S.C. § 546(e), the "good faith" defense under § 550(b), and the

defense of being a mere conduit under § 550(a). For the reasons set forth herein, the motion to

dismiss is denied in its entirety.

## JURISDICTION

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). Personal jurisdiction has not been contested by the Defendants.

## BACKGROUND

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A. (In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on April 12, 2012. (Compl., ECF[1] No. 1). The Complaint was amended on April 21, 2023 to correct the name of the Defendant in the caption, to dismiss Count One of the Complaint in its entirety, and to dismiss those claims in Count Two which seek recovery of three transfers allegedly made to Defendant on January 17, 2003, March 14, 2003, and April 14, 2003. (Stip. and Order ¶¶ 1-4, ECF No. 101). "The Complaint, together with paragraphs 1 through 4 in [the April 21, 2023] Stipulation and Order, are deemed to be the Amended Complaint ('Amended Complaint) in this adversary proceeding." (*Id.* ¶ 5). Via the Amended Complaint, the Trustee seeks to recover approximately $21,247,755 in BLMIS customer property transfers to Defendant from Fairfield Sentry Limited ("Fairfield Sentry"). (Compl. ¶¶ 49, 57–59 ECF No. 1; Stip. and Order, ECF No. 101).

ZCM is a Bermuda private limited company with a place of business in Hamilton, Bermuda. (*Id.* ¶ 22). The Amended Complaint alleges that it directed funds to be invested with

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01512-cgm.

BLMIS through Fairfield Sentry and Kingate Global Fund Ltd.[2]  (*Id.* ¶ 2).  These funds were

known as "Feeder Funds" because the purpose of the funds was to invest assets with BLMIS.

(*Id.*).  Fairfield Sentry maintained over 95% of its assets in BLMIS customer accounts.  (*Id.*).  In

the six years preceding the filing date of the main case, Fairfield Sentry received approximately

$3 billion in transfers from BLMIS.  (*Id.* ¶ 44).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and other feeder funds to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  (*Id.* ¶ 43).  In 2011, the Trustee settled with Fairfield

Sentry.  (*Id.* ¶ 48).  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion, (Consent J., 09-01239-cgm, ECF No. 109) of which Fairfield Sentry

was obligated to pay only $70 million to the Trustee under the terms of the settlement.  (Compl.

¶ 48).  The Trustee then commenced a number of adversary proceedings against subsequent

transferees, like Defendant, to recover the approximately $3 billion in missing customer

property.

In its motion to dismiss, ZCM argues that the Trustee has failed to allege that the initial

transfers from BLMIS to Fairfield Sentry were avoided, that the Complaint fails to allege that

ZCM was a transferee under § 550(a) instead of a mere conduit, that it is protected by the safe

harbor provisions of § 546(e), that the Complaint fails to allege on its face that the transfers

allegedly received by ZCM from Fairfield Sentry were composed of customer property

originating from BLMIS, and that it is entitled to the so-called "Good Faith" defense under §

---

[2] The Court entered an order approving a settlement between the Trustee and Kingate Global
Fund Ltd.  *Picard v. Ceretti*, Adv. Pro. No. 09-01161 (CGM) (Bankr. S.D.N.Y. Aug. 6, 2019),
ECF No. 417.  The settlement satisfied the Trustee's claims against the Kingate funds, and the
Trustee amended the Complaint in this proceeding to dismiss claims for recovery of subsequent
transfers allegedly received from Kingate Global Fund Ltd.  (Stip. and Order ¶ 2, ECF No. 101;
Compl. ¶ 51–55).

550(b).  (Mem. L at 2–3, ECF No. 103).  The Trustee has filed opposition.  (Opp'n, ECF No.

107).  The parties entered into a stipulation to waive oral arguments.  (Stip. and Order, ECF No.

119).

## DISCUSSION

### 12(b)(6) standard

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

**Recovery of Subsequent Transfers**

The Trustee is seeking to recover subsequent transfers made to Defendant by Fairfield

Sentry.  Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer."  *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue.  *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.*

However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar

accounting of the exact funds at issue." *Id*.

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is

avoidable, he is not required to avoid the transfer received by the initial transferee before

asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin*

*Servs., Inc.)*, 408 F.3d 689, 706–07 (11th Cir. 2005). The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. (*Id.*).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in

adversary proceeding 09-1239 (the "Fairfield Complaint"). (Compl. ¶ 43, ECF No. 1) ("The

Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint

as if fully set forth herein."). Whether the Fairfield Complaint properly pleads the avoidability

of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.*, (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

(cleaned up). ZCM argues that the Trustee has not properly adopted the Fairfield Complaint,

which would render inadequate any allegations that the initial transfers were avoided. (Mem. L. 7–11, ECF No. 103).

**Adoption by Reference**

"Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up). The Court will follow the district court's instruction.

As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R.

39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the

same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrastar*

*Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary

proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal*

*dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montange (In re*

*Montange)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010)

("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

ZCM argues that the Trustee has not clearly specified which statements from the Fairfield

Complaint are to be incorporated and has unfairly forced the Defendant to respond to allegations

outside of its knowledge. (Mem. L. at 8–10). The Court disagrees. Some courts have worried

that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results.

*Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted),

*aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Defendant,

like many subsequent transfer defendants in this SIPA proceeding, is aware of what has been

filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is

happening on a proceeding-wide basis. (*See, e.g.,* Suppl. Mem. L. to Dismiss Based on

Extraterritoriality, ECF No. 54).

Allowing the Trustee to incorporate the Fairfield Complaint by reference does not

prejudice the Defendant. Fairfield Sentry had a complicated corporate structure with many

insiders who have allegedly had knowledge of BLMIS's fraud. This Court has reviewed the

Fairfield Complaint, in detail, on numerous occasions and there is not much of that document

that could be omitted. Insisting that the Trustee re-allege all of the allegations contained in the

Fairfield Complaint is an unnecessary, dilatory tactic by the Defendant.  If the Court were to

dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the

allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced

by delay in these already overly-prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re

BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr.

S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and

permits the amending of pleadings "when justice so requires.").  In that case, the Defendant

would be left in the same position it is now with respect to "allegations outside its knowledge."

(Mem. L. at 10, ECF No. 103).

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded,

with particularity, the avoidability of the initial transfer (despite the safe harbor, which will be

discussed in more detail below) due Fairfield Sentry's knowledge of BLMIS's fraud.  (Fairfield

Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated

Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that

the following adversary proceedings be returned to the Bankruptcy Court for further proceedings

consistent with this Opinion and Order . . . .").

**Mere Conduit**

ZCM argues that it was a "mere conduit," as opposed to a transferee, because the Trustee

did not allege facts suggesting that ZCM exercised dominion and control over the money it

received from Fairfield Sentry or the ability to put the funds to its own purposes.  (Mem. L. 11–

15, ECF No. 103).  The Court of Appeals for the Second Circuit held in *In re Finley* that a

financial intermediary is not an "initial transferee" for purposes of § 550.  *Finley v. Alexander (In

re Finley)*, 130 F.3d 52, 57 (2d Cir. 1997).  Some courts have applied the "dominion or control"

test to subsequent transferees.  *See Miller v. Porush* (*In re Stratton Oakmont, Inc.*), 234 B.R. 293,

313 n.9 (Bankr. S.D.N.Y. 1999) (applying the dominion and control test to subsequent

transferees) (citing *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir.

1988)).

The mere conduit test is not a formal one.  *Bear, Stearns Sec. Corp. v. Gredd (In re

Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) ("[J]ust because a party is not a

'mere conduit' in the prototypical sense of the term - i.e., a party that receives the money merely

to pass it on to a third-party - does not mean that the party has requisite 'dominion and

control.'").  Courts will consider both the legal rights of the Defendant with respect to the funds

at issue and the reality of its control over those funds.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff

Inv. Sec. LLC*, 634 B.R. 39, 51–52 (Bankr. S.D.N.Y. 2021), *aff'd sub nom. Sec. Inv. Prot. Corp.

v. Madoff*, No. 21-CV-8678 (JPO), 2022 WL 4592898 (S.D.N.Y. Sept. 30, 2022), and *aff'd*, No.

21-CV-8678 (JPO), 2022 WL 7219262 (S.D.N.Y. Oct. 6, 2022); *Gredd*, 397 B.R. at 15–17

(examining the actual discretion over the funds the recipient could exert).  A defendant need not

have "unfettered control" over the funds in order to be more than a mere conduit.  397 B.R. at 18

("*Lowry [v. Security Pacific Business Credit, Inc. (In re Columbia Data Products, Inc.)*, 892

F.2d 26 (4th Cir. 1989)] stands for the proposition that a party can be an initial transferee even if

it cannot use received funds for endeavors unrelated to the underlying transaction.")

The mere conduit defense is an affirmative defense.  *Isaiah v. JPMorgan Chase Bank*,

N.A., 960 F.3d 1296, 1304 (11th Cir. 2020).  As an affirmative defense, it "must be proved by

the defendant seeking its protection."  *Id.*; *see also Enron Corp. v. J.P. Morgan Sec. Inc. (In re

Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (stating that the burden of proof is on the

defendant asserting a mere conduit defense); *see also In re Pretty Girl, Inc.*, 644 B.R. 298, 309

(Bankr. S.D.N.Y. 2022) ("The party asserting the 'mere conduit defense' has the burden of proof of establishing its status as a mere conduit, rather than a transferee.") (citations omitted). Establishing that a defendant was a mere conduit of the funds instead of a true transferee will be fact-intensive inquiry, which is best undertaken after the opposing party has "an opportunity to conduct discovery for various facts that are within the control" of the party raising the mere conduit defense. *Enron* 361 B.R. at 45. This Court has said as much on multiple prior occasions. *See, e.g., Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A. (In re BLMIS)*, Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787, at *7–8 (Bankr. S.D.N.Y. Jan. 6, 2023).

ZCM improperly attempts to flip the burden of proof when it states that the "Trustee has not met his burden of pleading sufficient facts to show that ZCM had the ability to exercise 'dominion or control' over the funds at issue." (Mem. L. at 14, ECF No. 103). The Trustee has alleged that Defendant was a customer of Fairfield Sentry. (Compl. ¶¶ 6, 49, ECF No. 1). ZCM entered into subscription agreements with Fairfield Sentry under which it wired Funds to Fairfield Sentry. (*Id.* ¶ 7). The Trustee has plausibly alleged that ZCM exercised dominion and control over the investments and redemption of BLMIS customer property. Defendant is free plead and prove otherwise at a later stage of litigation. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection.").

**The Safe Harbor Does Not Bar the Avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. (Mem. L. at 15, ECF No. 103). Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of)

a ... financial institution [or] financial participant ... in connection with a securities contract." 11

U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial*

transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018)

(emphasis in original). Where the initial transferee fails to raise a § 546(e) defense against the

Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled

to raise a § 546(e) defense against recovery of the initial transfer. *Picard v. Fairfield Inv. Fund*

(*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3

(Bankr. S.D.N.Y. Aug. 6, 2021). On the issue of the safe harbor, the Court adopts the district

court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR),

2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS

were neither settlement payments nor payments in connection with a securities contract.

> The safe harbor was intended, among other things, to promote the reasonable
> expectations of legitimate investors. If an investor knew that BLMIS was not
> actually trading securities, he had no reasonable expectation that he was signing a
> contract with BLMIS for the purpose of trading securities for his account. In that
> event, the Trustee can avoid and recover preferences and actual and constructive
> fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal

citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re*

*BLMIS*), 12 F.4th 171 (2d Cir. 2021)). The district court determined that "those defendants who

claim the protections of Section 546(e) through a Madoff Securities account agreement but who

actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of

the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground

must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No.

12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Multi-Strategy*

*Fund*, 2022 WL 16647767, at *7 ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.

Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that

Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Id.* at *3–7. Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS's transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contracts with Defendant (rather than a contract with BLMIS) is not answerable on the pleadings. If such a fact-specific determination is needed, the Court will make it with the benefit of a "full factual record." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor Cannot Be Used to Defeat a Subsequent Transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendants on account of the securities contracts between Fairfield sentry and Defendant. The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of

the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *BNP Paribas S.A.* 594 B.R. at 197.

ZCM argues that the Trustee has failed to satisfy the requirement under § 548(a)(1)(A) to plead BLMIS's "actual intent to hinder, delay or defraud" creditors. (Mem. L. at 18–21, ECF No. 103). As the Trustee notes in opposition, it is hard to square this argument with the Defendant's acknowledgement that the Complaint does not allege that ZCM received transfers within two years of the filing date. (Opp'n at 15, ECF No. 107). To the extent that ZCM objects to the applicability of the Ponzi Scheme presumption, the Court disagrees with ZCM's reliance on Judge Menashi's concurrence in *Picard v. Citibank* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021*) cert. denied*, 142 S. Ct. 1209 (2022) ("*Citibank*"), in which he "explained that the 'Ponzi scheme presumption' presents a 'questionable' application of fraudulent transfer statutes." (Mem. L. at 19).

In relevant part, § 548(a)(1)(A) allows the Trustee to avoid any transfer made within two years before the filing date of this SIPA action, if BLMIS made the transfer with "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A). Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied. (*See* Compl. ¶¶ 16–33, ECF No. 1). The "Ponzi scheme presumption" allows courts to presume actual intent to defraud on part of the operator of the Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."). In this case, the Ponzi scheme presumption allows the Court to presume that BLMIS made the initial transfers with actual intent to defraud because Madoff has admitted to operating a Ponzi scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007).  The Ponzi scheme presumption makes perfect sense in cases such as this one.  BLMIS had no legitimate assets and therefore every transfer made by BLMIS was made with actual intent to defraud in order to ensure that Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS's actual fraudulent intent is presumed via the Ponzi scheme presumption.  (*See* Compl. ¶¶ 1, 16–33, ECF No. 1).  Intent to defraud is established as debtor operated a Ponzi scheme.  *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Omnibus Good Faith Decision*, 531 B.R. at 471) ("the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("the fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'").  That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS's actual intent on this issue.  *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a matter of law).

This Court has re-read Judge Menashi's concurrence in *Citibank* and finds it to be unpersuasive.  The Ponzi scheme presumption does not turn would-be preferences into

fraudulent transfers.  All the Ponzi scheme presumption does is save the Trustee and the courts

time and resources by presuming that each transfer was made with actual fraudulent intent.  As

the District Court has stated, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme

presumption remains the law of this Circuit.'"  *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK),

2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022), *aff'd sub nom. In re Bernard L. Madoff Inv.*

*Sec. LLC*, No. 22-1107, 2023 WL 5125596 (2d Cir. Aug. 10, 2023), and *aff'd sub nom. In re*

*Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5439455 (2d Cir. Aug. 24, 2023)

(citing *Gredd*, 397 B.R. at 11); *see also Brown v. Picard (In re BLMIS)*, No. 22-CV-3882 (VEC),

2023 WL 4744195, at *5 (S.D.N.Y. July 25, 2023) ("The Bankruptcy Court correctly concluded

that the transfers at issue in this case are subject to the presumption of fraudulent intent that

applies to a Ponzi scheme.").  The Court agrees with "every court to opine on the application of

the presumption in the context of the BLMIS Ponzi scheme" and will not now discard the

presumption.  *Sage Realty*, 2022 WL 1125643, at *28.

**BLMIS Customer Property**

Defendant argues that the Complaint fails to plead that it received BLMIS customer

property.  (Mem. L. at 21, ECF No. 103).  The Trustee has pleaded that initial transfers from

Fairfield Sentry were "subsequently transferred either directly or indirectly to, or for the benefit

of, Defendant ZCM."  (Compl. ¶ 49, ECF No. 1).; (*see also id.* Ex. F, Chart of Subsequent

Transfers).  The Complaint sets forth the initial transfers of customer property from BLMIS to

Fairfield Sentry.  (*Id.* Exs. D, E).  The exhibits to the Complaint provide Defendant with the

exact date and amount of each transfer the Trustee is seeking to recover.  These exhibits provide

Defendants with the "who, when, and how much" of each transfer.  *BNP Paribas S.A.*, 594

B.R.at 195.

Defendant argues that the allegations that the transfers made to ZCM were composed of customer property "are to a large extent impossible, not merely implausible," as the "amount of funds the Trustee alleges were subsequent transfers of customer property far exceeds the amount of customer property Sentry actually received from BLMIS." (Mem. L. at 22, ECF No. 103). That is, the "Trustee alleges that BMLIS transferred 'approximately $3 billion' to Fairfield Sentry, . . . [b]ut the Trustee seeks to 'recover' at least $5.3 billion in total. . . ." (*Id.* at 25).

To consider allegations made in dozens of other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation. The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 Fed.Appx. 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that Defendants received BLMIS monies.

ZCM argues that the Complaint "repeatedly seeks to recover alleged subsequent transfers to ZCM during time periods when, according to the Trustee's own pleadings, the amounts that

Sentry had paid out, all allegedly as subsequent transfers of customer property, vastly exceeded
the amounts that BLMIS had transferred to Sentry to that point in time." (Mem. L. at 28, ECF
No. 103).

The Court finds that the Trustee has plausibly alleged Defendant received BLMIS
customer property. The Complaint states that Fairfield Sentry did not have any assets that were
not BLMIS customer property. The Fairfield Complaint, which is incorporated by reference into
this Complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.
(Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with
Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its
investment decisions, but also the custody of its assets, to BLMIS.").

Accepting these allegations as true, a gap in time between the initial and subsequent
transfer is of no consequence because 95% of all Fairfield assets are allegedly BLMIS customer
property. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the court must accept factual
allegations as true). It is more plausible that the subsequent transfers that the Trustee seeks to
recover from Defendant came from BLMIS customer property than that it came from some other
unnamed source.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the
Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see
also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for
BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also
the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did
not have any assets that were not customer property. In this case, the Trustee is not seeking to
collect $5 billion from Defendants. He is seeking approximately $21.2 million, which easily

could come from the $3 billion Fairfield received from BLMIS.  If the Court were to accept

Defendant's argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's

subsequent transfer claims in all of the adversary proceedings since the Court has no idea which

transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the

subsequent transfers actions to determine which transfers were made from the $3 billion of

BLMIS customer property and which were not.  The Court is simply not willing to have such a

trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Defendants received customer property because Fairfield

Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

**Whether Defendant Took the Transfers for Value, in Good Faith, and without Knowledge
of the Voidability of the Initial Transfers**

Defendant has raised the "good faith defense" under § 550(b), arguing that this Court

should dismiss the Trustee's complaint because it took "for value," "in good faith," and "without

knowledge of the voidability of the transfers."  (Mem. L. at 32–37, ECF No. 103).  "An

affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6),

without resort to summary judgment procedure, if the defense appears on the face of the

complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  "Not only

must the facts supporting the defense appear on the face of the complaint, but, as with all Rule

12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim that would entitle him to relief."

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up).  A "plaintiff is entitled to all

reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*

    i.    *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received.

If Defendant knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust."). It has not yet been determined whether Defendant knew if the shares it redeemed from Fairfield Sentry had value.

"Value" is Defendant's burden to plead and prove. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

ii.    *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendant, and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry.  Discovery is required on this issue.

iii.    *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendant's motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendants burden to plead and prove. It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Defendant subjectively knew; "whether these facts put [Defendant] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the [Defendant's] position to conduct further inquiry into a debtor-transferor's possible fraud; and whether "diligent inquiry by [Defendant] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via EOrders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

**Dated: November 17, 2023**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

Page **25** of 25